UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW JOHNSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-2310-E |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM OPINION AND ORDER DENYING MOTION FOR STAY

The matters before the Court are (1) Johnson's motion, filed May 4, 2021 (ECF no. 30), to stay and hold this case in abeyance or, alternatively, for an extension of time within which to reply to Respondent's Answer and (2) Respondent's response in opposition to Johnson's stay motion, filed May 6, 2021 (ECF no. 31). For the reasons discussed below, Johnson's request for a stay will be denied but his request for an extension of time within which to file his reply brief will be granted.

Background

The facts of Johnson's capital offense are not in genuine dispute. They were recorded on a store surveillance camera. In May 2012, Johnson entered a convenience store and poured a bottle of what was later determined to be lighter fluid over the head of 76-year-old store clerk Nancy Harris. Johnson then demanded money. As Harris attempted to open the cash register, Johnson took two cigarette lighters, two packages of cigarettes, and a ring from Harris' finger. Once Harris opened the cash register, Johnson took the money and set Harris aflame. As Harris frantically attempted to extinguish herself and her clothing, according to the Texas Court of Criminal Appeals, the video showed Johnson "calmly" select candy from a store display and then walk out

of the store.  *Ex parte Johnson*, No. WR-86,571-01, 2019 WL 4317046, at *1 (Tex. Crim. App. Sept. 11, 2019).  Police officers arrived at the convenience store very quickly and used a fire extinguisher to put out the flaming Harris, who died five days later from her burn injuries.  A little more than an hour after setting Harris afire, Johnson was arrested shirtless carrying two new cigarette lighters, two packages of cigarettes, and Harris' ring.  Police noted his unusually calm demeanor during his transport to the police station, corroborated by a video.

At the punishment phase of trial, the prosecution presented extensive evidence showing Johnson's prior criminal history and detailing the painful physical decline and death Harris suffered in the days after she was set on fire.  The defense presented an extensive case in mitigation, including testimony from (1) a pair of experts about Johnson's drug addiction, (2) Johnson's family and friends concerning his difficult childhood, positive character traits, and difficulties with drugs, and (3) Johnson himself, in which he expressed his remorse for his offense, swore he was high on drugs at the time of the offense, and declared that he had not intended to set Harris on fire.

The jury found Johnson guilty of capital murder and answered the Texas capital sentencing special issues in a manner requiring the trial court to impose a sentence of death.  Johnson appealed, asserting 65 points of error.  The Texas Court of Criminal Appeals affirmed his conviction and sentence.  *Johnson v. State*, No. AP-77,030, 2015 WL 7354609 (Tex. Crim. App. Nov. 18, 2015), *cert. denied*, 136 S. Ct. 2509 (2016).  The Texas Court of Criminal Appeals subsequently denied Johnson's application for state habeas corpus relief.  *Ex parte Johnson*, No. WR-86,571-01, 2019 WL 4317046 (Tex. Crim. App. Sept. 11, 2019).

On September 11, 2020, Johnson filed his original federal habeas corpus petition, asserting five groups of claims for relief, including claims that (1) his trial counsel rendered ineffective assistance by failing to adequately investigate Johnson's background and present available

mitigating evidence, (2) his constitutional rights were violated by virtue of the lack of definitions of key terms in the Texas capital sentencing special issues in his punishment phase jury charge, and (3) the fact the jury's prediction of future dangerousness (in its affirmative answer to the first capital sentencing special issue) has, in hindsight, proven to be factually inaccurate (ECF no. 21, at 8-82). Respondent filed his Answer on April 9, 2021, arguing in part that (1) the state habeas court rejected Johnson's ineffective assistance claims on the merits after full evidentiary development, (2) on direct appeal, the Texas Court of Criminal Appeals denied Johnson's challenge to the efficacy of his punishment phase jury charge and the Texas capital sentence special issues incorporated therein, and (3) Johnson may not re-litigate the validity of the jury's affirmative answer to the Texas capital sentencing statute's future dangerousness special issue using new evidence obtained after trial (ECF no. 29, 34-76).

<u>Motion for Stay and Abeyance</u>

On May 4, 2021, Johnson filed a motion (ECF no. 30) seeking a stay and abeyance of this cause to permit him to interview (1) unidentified prison personnel who have personal knowledge of Johnson's behavior during his current incarceration on death row and (2) members of Johnson's jury about their understanding of the Texas capital sentencing special issues and their possible reactions to new and additional mitigating evidence that was not presented during Johnson's trial (which Johnson argues is relevant to the prejudice prong of *Strickland* analysis). Johnson argues that practical limitations on travel and interpersonal contact have during the current COVID-19 pandemic have made it impossible for his federal habeas team to procure interviews with unidentified individuals who fall within the two categories indicated above.

A stay and abeyance to permit exhaustion of state court remedies on unexhausted claims for relief is appropriate in the context of a pending federal habeas corpus proceeding only when a

district court determines that (1) there is good cause for a petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005); *Haynes v. Quarterman*, 526 F.3d 189, 196 (5th Cir. 2008).

The first and last of these three factors do not weigh in Johnson's favor. Johnson was afforded an evidentiary hearing during the course of his state habeas corpus proceeding. The Supreme Court and Fifth Circuit have both made clear that, under the AEDPA, the proper place for development of the factual bases for federal habeas claims is the state courts. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places burden on federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court).

Johnson does not allege any specific facts showing that he was unable, despite the exercise of due diligence, to fully develop and present the factual bases for his federal habeas claims during the course of his state habeas corpus proceeding. Specifically, Johnson identifies nothing which precluded him from subpoenaing to testify at his state habeas evidentiary hearing either (1) his state petit jurors or (2) any employees of the Texas Department of Criminal Justice ("TDCJ") who possessed personal knowledge of Johnson's behavior on death row. While Johnson refers to the effects of the current COVID-19 pandemic, his state habeas corpus proceeding culminated in the Texas Court of Criminal Appeals' denying his state habeas corpus application in September 2019, long before that contagion reached the shores of this nation. The current pandemic did not prevent Johnson from interviewing his jurors or relevant TDCJ personnel prior to that time.

Johnson's request for a stay to permit interviews of his petit jurors (to ascertain how they might have reacted had his trial counsel presented a more extensive case in mitigation) is a small horse soon curried. As Respondent correctly points out, affidavits of the type Johnson proposes to obtain from his jurors, i.e., those addressing the jurors' subjective understanding of the jury charge and speculative opinions as to the efficacy of additional mitigating evidence on their punishment phase verdict, are not admissible in a federal habeas corpus proceeding. *See Warger v. Shauers*, 574 U.S. 40, 44–53 (2014) (holding Rule 606(b) of the Federal Rules of Evidence excluded juror affidavits relating contents of jury deliberations designed to show juror gave false testimony during voir dire); *Tanner v. United States*, 483 U.S. 107, 120–25 (1987) (holding Rule 606(b) of Federal Rules of Evidence precludes juror testimony regarding "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith."); *Young v. Davis*, 835 F.3d 520, 528–29 (5th Cir. 2016) ("we have repeatedly held that Rule 606(b) forbids consideration of juror affidavits in federal habeas cases."); *Summers v. Dretke*, 431 F.3d 861, 873 (5th Cir. 2005) ("Under Rule 606(b) of the Federal Rules of Evidence, jurors' affidavits are inadmissible 'regarding the following four topics: (1) the method or arguments of the jury's deliberations, (2) the effect of any particular thing upon an outcome in the deliberations, (3) the mindset or emotions of any juror during deliberations, and (4) the testifying juror's own mental process during the deliberations.'").

Likewise, the Fifth Circuit has held that juror affidavits are not admissible in support of a claim suggesting jurors were confused by the provisions of the jury charge when a similar claim was rejected on the merits in a state habeas corpus proceeding or direct appeal. *See Young v.*

*Davis*, 860 F.3d 318, 333–34 (5th Cir. 2017) (holding Supreme Court's holding in *Cullen v. Pinholster*, 563 U. S. 170, 181–82 (2011), precludes consideration of juror affidavits addressing claim of alleging juror confusion over jury charge where that claim was rejected on merits by state court and refusing to extend Supreme Court's holding in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017), to similar complaints).

Absent an allegation that a juror made explicit statements indicating racial animus or ethnic bias was a significant motivating factor in his or her vote to convict, juror affidavits of the type described by Johnson are inadmissible pursuant to Rule 606(b). *Peña-Rodriguez*, 137 S. Ct. at 869; *Austin v. Davis*, 876 F.3d 757, 789–91 (5th Cir. 2017). Johnson makes no allegation in this Court that any of his petit jurors made any overt or explicit statement during deliberations which could be construed as indicating that racial animus or ethnic bias was a motivating factor in that juror's vote at either phase of Johnson's capital murder trial. Thus, Johnson is not entitled to a stay and abeyance from this Court while he belatedly interviews his petit jurors.

Additionally, Johnson's attempts to attack the constitutionality of the Texas capital sentencing scheme's future dangerousness special issue and argument that his post-conviction good behavior while on death row somehow proves the factual inaccuracy of the jury's affirmative answer to that special issue are both without arguable merit.

As Respondent correctly argues, Johnson's claim arguing that he is entitled to challenge the validity of his capital sentence based upon evidence that was clearly unavailable at the time of his trial, i.e., evidence of Johnson's good behavior while a prisoner on death row, is foreclosed by the nonretroactivity principle announced in *Teague v. Lane*, 489 U.S. 288 (1989), which forecloses adoption of the new principles of federal constitutional criminal procedure in federal habeas corpus proceedings. Under the holding in *Teague*, federal courts are generally barred from applying new

6

constitutional rules of criminal procedure retroactively on collateral review. *Caspari v. Bohlen*, 510 U.S. 383, 389–90 (1994). A "new rule" for *Teague* purposes is one which was not dictated by precedent existing at the time the defendant's conviction became final. *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997) (holding "new rule" either "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not "dictated by precedent existing at the time the defendant's conviction became final"). Under this doctrine, unless reasonable jurists hearing the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor, a federal habeas court is barred from doing so on collateral review. *Id.*

The holding in *Teague* is applied in three steps: first, the court must determine when the petitioner's conviction became final; second, the court must survey the legal landscape as it then existed and determine whether a state court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution; and third, if the rule advocated by the petitioner is a new rule, the court must determine whether the rule falls within one of the two narrow exceptions to the nonretroactivity principle. *Caspari*, 510 U.S. at 390.

The only two exceptions to the *Teague* nonretroactivity doctrine are reserved for (1) new rules forbidding criminal punishment of certain primary conduct and rules prohibiting a certain category of punishment for a class of defendants because of their status or offense, and (2) "watershed" rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding, i.e., a small core of rules requiring observance of those procedures that are implicit in the concept of ordered liberty. *O'Dell*, 521 U.S. at 157.

Johnson's capital sentencing jury was asked whether the evidence established beyond a reasonable doubt that there was a probability Johnson would commit criminal acts of violence that would constitute a continuing threat to society. *Johnson*, 2015 WL 7354609, at *7. His jury answered this special issue affirmatively. The Texas Court of Criminal Appeals held on direct appeal there was sufficient evidence to support the jury's affirmative answer to that special issue, specifically identifying the facts of the offense, Johnson's criminal history, and evidence showing Johnson's escalating pattern of violence and disrespect for the law. *Id.*

In his second claim for federal habeas relief, Johnson argues, in part, that the Texas future dangerousness special issue is (1) unconstitutionally vague; (2) unreliable based, in part, on psychological studies showing the difficulty in accurately predicting future violence by incarcerated individuals, including those who were later released from confinement; and (3) therefore the jury's affirmative answer to the future dangerousness special issue necessarily violated the principle announced in *Johnson v. Mississippi*, 486 U.S. 578 (1988) (ECF no. 21, at 70-82).

In *Johnson v. Mississippi*, a state court employing a weighing capital sentencing scheme sentenced the defendant to death in 1982 citing his 1963 New York felony conviction for assault with intent to commit rape as one of three aggravating factors supporting the sentence.[1] The prosecution presented no evidence about the conduct underlying the prior conviction but relied instead on a single authenticated copy of a document indicating the conviction. *Johnson*, 486 U.S. at 586 ("[T]he jury was not presented with any evidence describing that conduct—the document

---

[1] More specifically, the *Johnson* jury found the following aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person of another; (2) the defendant committed capital murder for the purpose of avoiding arrest or effecting an escape from custody; and (3) the capital murder was especially heinous, atrocious, and cruel. *Johnson*, 486 U.S. at 581 n.1.

8

submitted to the jury proved only the facts of conviction and confinement, nothing more."). The prosecution repeatedly referred to that evidence in the sentencing hearing. *Id.* at 581 (quoting prosecutor at trial as saying "I say that because of having been convicted of second degree assault with intent to commit first degree rape and capital murder that Samuel Johnson should die"). "Thus, the death sentence [in *Johnson*] relied on the mere fact of conviction." *Spivey v. Head*, 207 F.3d 1263, 1281 (11th Cir.), *cert. denied*, 531 U.S. 1053 (2000). After his Mississippi conviction and sentence, Johnson's attorneys successfully prosecuted a post-conviction proceeding in New York in which they argued Johnson had been denied his right to appeal; in the course of his subsequent appeal, the New York appellate court reversed Johnson's conviction. *Johnson*, 486 U.S. at 582. The Mississippi Supreme Court denied Johnson post-conviction relief. The United States Supreme Court reversed, holding that allowing the death sentence to stand although based in part on a reversed conviction violated the Eighth Amendment. *Id.* at 586 ("The prosecutor repeatedly urged the jury to give [Johnson's prior conviction] weight in connection with its assigned task of balancing aggravating and mitigating circumstances 'one against the other.'").

Johnson's reliance upon Supreme Court case law focused on the narrowing function required by the Eighth Amendment is misplaced.

In *Tuilaepa v. California*, 512 U.S. 967 (1994), the Supreme Court explained that the Eighth Amendment addresses two different but related aspects of capital sentencing: the eligibility decision and the selection decision. *Tuilaepa*, 512 U.S. at 971. The Supreme Court's analysis of those two aspects of capital sentencing provided the first comprehensive system for analyzing Eighth Amendment claims a clear majority of the Supreme Court had ever offered:

> To be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment. To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one "aggravating

9

> circumstance" (or its equivalent) at either the guilt or penalty phase. The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both). As we have explained, the aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague. * * *
>
> We have imposed a separate requirement for the selection decision, where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence. "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." That requirement is met when the jury can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime.

*Id.* at 971–73 (citations omitted).

In *Tuilaepa*, the Supreme Court clearly declared its view that States may adopt capital sentencing procedures which rely upon the jury, in its sound judgment, to exercise wide discretion. *Id.* at 974. The Supreme Court also concluded, at the *selection* stage, States are not confined to submitting to the jury specific propositional questions but, rather, may direct the jury to consider a wide range of broadly-defined factors, such as "the circumstances of the crime," "the defendant's prior criminal record," and "all facts and circumstances presented in extenuation, mitigation, and aggravation of punishment." *Id.* at 978.

In *Loving v. United States*, 517 U.S. 748, 755 (1996), the Supreme Court described the first part of the *Tuilaepa* analysis, i.e., the eligibility decision, as follows:

> The Eighth Amendment requires, among other things, that "a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" Some schemes accomplish that narrowing by requiring that the sentencer find at least one aggravating circumstance. The narrowing may also be achieved, however, in the definition of the capital offense, in which circumstance the requirement that the sentencer "find the existence of the aggravating circumstance in addition is no part of the constitutionally required narrowing process." (citations omitted).

10

The Supreme Court subsequently elaborated on the distinction between the narrowing function or "eligibility decision" and the "selection phase" of a capital sentencing proceeding in *Buchanan v. Angelone*, 522 U.S. 269, 275–77 (1998):

> Petitioner initially recognizes, as he must, that our cases have distinguished between two different aspects of the capital sentencing process, the eligibility phase and the selection phase. *Tuilaepa v. California,* 512 U.S. 967, 971, 114 S.Ct. 2630, 2634, 129 L.Ed.2d 750 (1994). In the eligibility phase, the jury narrows the class of defendants eligible for the death penalty, often through consideration of aggravating circumstances. *Ibid.* In the selection phase, the jury determines whether to impose a death sentence on an eligible defendant. *Id.,* at 972, 114 S.Ct., at 2634–2635. Petitioner concedes that it is only the selection phase that is at stake in his case. He argues, however, that our decisions indicate that the jury at the selection phase must both have discretion to make an individualized determination and have that discretion limited and channeled. See, *e.g., Gregg v. Georgia,* 428 U.S. 153, 206–207, 96 S.Ct. 2909, 2940–2941, 49 L.Ed.2d 859 (1976). He further argues that the Eighth Amendment therefore requires the court to instruct the jury on its obligation and authority to consider mitigating evidence, and on particular mitigating factors deemed relevant by the State.
> 
> No such rule has ever been adopted by this Court. While petitioner appropriately recognizes the distinction between the eligibility and selection phases, he fails to distinguish the differing constitutional treatment we have accorded those two aspects of capital sentencing. It is in regard to the eligibility phase that we have stressed the need for channeling and limiting the jury's discretion to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition. In contrast, in the selection phase, we have emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination. *Tuilaepa, supra,* at 971–973, 114 S.Ct., at 2634–2636; *Romano v. Oklahoma,* 512 U.S. 1, 6–7, 114 S.Ct. 2004, 2008–2009, 129 L.Ed.2d 1 (1994); *McCleskey v. Kemp,* 481 U.S. 279, 304–306, 107 S.Ct. 1756, 1773–1775, 95 L.Ed.2d 262 (1987); *Stephens, supra,* at 878–879, 103 S.Ct., at 2743–2744.
> 
> In the selection phase, our cases have established that the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence. *Penry v. Lynaugh,* 492 U.S. 302, 317–318, 109 S.Ct. 2934, 2946–2947, 106 L.Ed.2d 256 (1989); *Eddings v. Oklahoma,* 455 U.S. 104, 113–114, 102 S.Ct. 869, 876–877, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–2965, 57 L.Ed.2d 973 (1978). However, the state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence. *Johnson v. Texas,* 509 U.S. 350, 362, 113 S.Ct. 2658, 2666, 125 L.Ed.2d 290 (1993); *Penry, supra,* at 326, 109 S.Ct., at 2951; *Franklin v. Lynaugh,* 487 U.S. 164, 181, 108 S.Ct.

2320, 2331, 101 L.Ed.2d 155 (1988). Our consistent concern has been that restrictions on the jury's sentencing determination not preclude the jury from being able to give effect to mitigating evidence. Thus, in *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), we held that the standard for determining whether jury instructions satisfy these principles was "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Id.,* at 380, 110 S.Ct., at 1198; see also *Johnson, supra,* at 367-368, 113 S.Ct., at 2669.

But we have never gone further and held that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence. And indeed, our decisions suggest that complete jury discretion is constitutionally permissible. See *Tuilaepa, supra,* at 978–979, 114 S.Ct., at 2638–2639 (noting that at the selection phase, the state is not confined to submitting specific propositional questions to the jury and may indeed allow the jury unbridled discretion); *Stephens*, *supra*, at 875, 103 S.Ct., at 2741–2742 (rejecting the argument that a scheme permitting the jury to exercise "unbridled discretion" in determining whether to impose the death penalty after it has found the defendant eligible is unconstitutional, and noting that accepting that argument would require the Court to overrule *Gregg, supra*).

The fundamental problem with Johnson's attempt to apply the holding in *Johnson v. Mississippi* to his Texas capital murder trial is that, unlike the subsequently invalidated aggravating factor involved in the Mississippi case, the Texas capital sentencing special issues are not aggravating factors and do not serve the narrowing function mandated by the Supreme Court's Eighth Amendment jurisprudence. *See, e.g., Lowenfield v. Phelps*, 484 U.S. 231, 242–47 (1988) (holding Texas capital sentencing special issues do not function as aggravating factors and, thus, do not require further definitions); *Jurek v. Texas*, 428 U.S. 262, 270–73 (1976) (plurality) (holding Texas capital sentencing statute requires finding of aggravating circumstances through its narrow statutory definition of capital murder and recognizing that it permits consideration of wide range of potentially mitigating evidence); *Woods v. Johnson*, 75 F.3d 1017, 1033–34 (5th Cir. 1996) (explaining that Texas capital sentencing scheme accomplishes constitutionally required narrowing function at guilt-innocence phase of trial by virtue of statutory definition of capital murder and that further narrowing is not constitutionally necessary; and also holding that,

therefore, there is no need for definitions of terms such as "probability," "criminal acts of violence," or "continuing threat to society").

Johnson's proposed new Eighth Amendment rule allowing invalidation of a jury's unanimous finding of a probability of future dangerousness by a showing that the defendant subsequently did not commit any acts of criminal violence while housed on Texas' death row misconstrues the Supreme Court's holding in *Johnson v. Mississippi* (which involved a jury's consideration of a subsequently invalidated aggravating factor) with the Texas capital sentencing scheme's future dangerousness special issue (which exclusively address the selection phase of capital sentencing). The Texas capital sentencing scheme's future dangerousness special issue plays no role part in the constitutionally mandated narrowing or "eligibility" function. *Lowenfield*, 484 U.S. at 242–47; *Woods*, 75 F.3d at 1033–34.

Texas, unlike Mississippi, is not a "weighing jurisdiction where capital sentencing juries must weigh "aggravating" versus "mitigating" factors before rending a verdict at the punishment phase of a capital murder trial. *See Hughes v. Johnson*, 191 F.3d 607, 621–23 (5th Cir. 1999) (holding no Eighth Amendment violation resulted from Texas Court of Criminal Appeals' refusal to engage in proportionality review of capital sentencing jury's answer to mitigation special issue because Texas is non-weighing jurisdiction); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) (Texas is "non-weighing" state). Rather, the Texas capital sentencing scheme performs the constitutionally mandated narrowing function, i.e., the process of making the "eligibility decision" discussed in *Tuilaepa*, at the guilt-innocence phase of a capital trial by virtue of the manner with which Texas defines the offense of capital murder in Section 19.03 of the Texas Penal Code. *See Johnson v. Texas*, 509 U.S. 350, 362 (1993) (holding its previous opinions upholding Texas capital sentencing scheme found no constitutional deficiency in means used to narrow group of offenders

subject to capital punishment because statute itself adopted different classifications of murder for that purpose); *Lowenfield*, 484 U.S. at 243–47 (comparing Louisiana and Texas capital murder schemes and noting they each narrow those eligible for death penalty through narrow statutory definitions of capital murder); *Jurek*, 428 U.S. at 268–75 (plurality opinion recognizing Texas capital sentencing scheme narrows category of murders for which death sentence may be imposed and this serves same purpose as requirements of other statutory schemes which require proof of aggravating circumstances to justify imposition of death penalty).

The Texas capital sentencing scheme under which Matthew Lee Johnson was tried, convicted, and sentenced performed the constitutionally required narrowing function discussed in *Tuilaepa* and *Loving* at the guilt-innocence phase of his trial. *See Sonnier v. Quarterman*, 476 F.3d 349, 365–67 (5th Cir. 2007) (recognizing Texas capital sentencing scheme, like one upheld by Supreme Court in *Kansas v. Marsh*, 548 U.S. 163 (2006), performs the constitutionally-required narrowing function through its statutory definition of capital murder).

Johnson's attempt to apply the holding in *Johnson v. Mississippi* to his jury's verdict at the punishment phase of his trial constitutes an effort to apply a new rule of constitutional criminal procedure in the context of a federal habeas corpus proceeding. This is forbidden by the holding in *Teague*.

A conviction becomes final for *Teague* purposes when either the United States Supreme Court denies a certiorari petition on the defendant's direct appeal or the time period for filing a certiorari petition expires. *Caspari*, 510 U.S. at 390. Johnson's conviction became final for *Teague* purposes no later than June 27, 2016, i.e., the date the United States Supreme Court denied his petition for writ of certiorari following the Texas Court of Criminal Appeals' affirmation of his conviction and sentence. *See Beard v. Banks*, 542 U.S. 406, 411–12 (2004) (recognizing state

criminal conviction ordinarily becomes final for *Teague* purposes when availability of direct appeal to state courts has been exhausted and time for filing petition for writ of certiorari has elapsed or timely filed petition for certiorari has been denied); *Caspari*, 510 U.S. at 390 ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.").

*Teague* remains applicable after the passage of AEDPA. *See Horn v. Banks*, 536 U.S. 266, 268–72 (2002) (applying *Teague* in AEDPA context); *Robertson v. Cockrell*, 325 F.3d 243, 255 (5th Cir. 2003) (recognizing continued vitality of *Teague* nonretroactivity doctrine under AEDPA). As of the date Johnson's conviction and sentence became final for *Teague* purposes, no federal court had ever held a Texas capital murder jury's affirmative answer to the Texas capital sentencing scheme's future dangerousness special issue could be invalidated based upon the defendant's conduct after the date of trial. Likewise, as of the same date, no federal court had ever held that a defendant's post-trial conduct could render a Texas capital sentencing jury's affirmative answer to the future dangerousness special issue constitutionally invalid.

Furthermore, such a new rule defies logic. Johnson's capital sentencing jury was asked, as part of the selection process of capital sentencing, whether there was a *probability* that he would commit criminal acts of violence that would constitute a continuing threat to society, not whether there was a *certainty* he would do so. Moreover, Johnson cites to no legal authority establishing that Texas' inclusion of its future dangerousness special issue as part of the selection phase in its capital sentencing process violates any constitutional provision, including the Eighth and Fourteenth Amendments.

Finally, insofar as Johnson argues in his second claim for federal habeas corpus relief that the Texas capital sentencing scheme's future dangerousness special issue is unconstitutionally vague, the Fifth Circuit has consistently rejected that argument for almost four decades. *See, e.g., Paredes v. Quarterman*, 574 F.3d 281, 294 (5th Cir. 2009) (holding the terms "probability, "criminal acts of violence," and "continuing threat to society" "have a plain meaning of sufficient content that the discretion left to the jury is no more than that inherent in the jury system itself"); *Turner v. Quarterman*, 481 F.3d 292, 299-300 (5th Cir. 2007) (rejecting claims the terms "probability, "criminal acts of violence," and "continuing threat to society" were so vague as to preclude a capital sentencing jury's consideration of mitigating evidence); *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005) (listing numerous Fifth Circuit opinions rejecting complaints about failure of Texas courts to define terms "probability, "criminal acts of violence," and "continuing threat to society" and holding claims attacking failure to define key terms employed in Texas future dangerousness special issue to be so insubstantial as not warranting Certificate of Appealability); *Hughes*, 191 F.3d at 615 (rejecting constitutional vagueness challenge to term "probability" as used in Texas future dangerousness special issue); *West v. Johnson*, 92 F.3d 1385, 1406 (5th Cir. 1996) (rejecting challenge to constitutionality of Texas future dangerousness special issue based upon lack of definitions of key terms used therein); *Woods*, 75 F.3d at 1033–34 (explaining that Texas capital sentencing scheme accomplishes constitutionally required narrowing function at guilt-innocence phase of trial by virtue of statutory definition of capital murder and that further narrowing is not constitutionally necessary; and also holding that, therefore, there is no need for definitions of terms such as "probability," "criminal acts of violence," or "continuing threat to society"); *James*, 987 F.2d at 1120 (holding there was no constitutional need for definitions of "probability," "criminal acts of violence," or "continuing threat to society" because those terms

possess common sense core of meaning); *Milton v. Procunier*, 744 F.2d 1091, 1095–96 (5th Cir. 1984) (upholding state trial court's restrictions on voir dire examination of venire members concerning their understanding of terms such as "probability" and "criminal acts of violence").

The Supreme Court has likewise repeatedly affirmed the constitutionality of the Texas capital sentencing scheme's future dangerousness special issue. *See, e.g., Lowenfield*, 484 U.S. at 242–47 (holding Texas capital sentencing special issues do not function as aggravating factors and, thus, do not require further definitions); *Pulley v. Harris*, 465 U.S. 37, 50 n.10 (1984) (holding Texas capital sentencing special issues have common sense core of meaning and are thus not unconstitutionally vague); *Jurek*, 428 U.S. at 270–73 (plurality) (holding Texas capital sentencing statute requires finding of aggravating circumstances through its narrow statutory definition of capital murder and recognizing that it permits consideration of wide range of potentially mitigating evidence).

Accordingly, Johnson has failed to assert a claim for relief for which a stay and abeyance under the standard announced in *Rhines* is appropriate. Johnson's motion for stay will be denied.

<u>Motion for Extension of Time to file Reply Brief</u>

Johnson's request for additional time within which to file his reply brief will be granted, however. Johnson's original petition is narrow in focus. Nonetheless, his second claim for relief is bereft of any explanation as to why this Court should ignore decades of Fifth Circuit case law upholding the Texas capital sentencing scheme's future dangerousness special issue against constitutional vagueness challenges. To avoid the possible imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure, it is essential that Johnson's federal habeas counsel do so.

Rule 11 provides in pertinent part that an attorney filing a litigation document (including a federal habeas corpus petition) certifies that the document (1) is not being presented for any

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016). As is explained at length above, Johnson's claim that the Texas capital sentencing scheme's future dangerousness special issue is unconstitutionally vague has been consistently rejected by the Fifth Circuit for decades, followed by consistent denials of certiorari review of those same decisions by the Supreme Court. Despite the long lines of Fifth Circuit case law rejecting the legal arguments underlying Johnson's second claim for relief, Johnson has made no good faith effort in this cause to distinguish any of the relevant Fifth Circuit case law rejecting his legal arguments, much less offer a nonfrivolous justification for extending, modifying, or reversing existing law or for establishing new law.

In the context of a federal habeas corpus proceeding, any argument for the establishment of "new law" must necessarily address the twin concerns of (1) the extremely narrow standard of review mandated by AEDPA and (2) the nonretroactivity doctrine announced in *Teague*. It is in this particular regard that Johnson's challenges to the Texas capital sentencing scheme are deficient under Rule 11. Whether this Court ultimately imposes sanctions pursuant to Rule 11, counsel in this cause and all federal habeas counsel are admonished to avoid asserting claims before this Court which have routinely been rejected by the Fifth Circuit without also furnishing this Court some nonfrivolous legal argument for "for extending, modifying, or reversing existing law or for establishing new law" which recognizes the reality of the limitations imposed upon this Court by both the AEDPA and *Teague*. *See Williams v. Lumpkin*, No. 3:20-CV-3030-N, 2021 WL 4502419, *5–7 (N.D. Tex. Oct. 1, 2021).

It is hereby ORDERED that:

1. Johnson's motion for stay and abeyance, filed May 4, 2021 (ECF no. 30), is in all respects DENIED.

2. Johnson's alternative request for an extension on the deadline for the filing of his reply brief to Respondent's Answer will be GRANTED as set forth below.

3. On or before January 31, 2022, Johnson shall file his reply to Respondent's Answer and explain therein why Petitioner's second claim for relief does not warrant imposition of Rule 11 sanctions.

**SO ORDERED**; signed January 13, 2022.

_____
Ada Brown
UNITED STATES DISTRICT JUDGE

19